UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIKAS GOEL and RAINFOREST TRADING
LTD.,

                            Plaintiffs,

     -v-

ANUSH RAMACHANDRAN, BUNGE LTD, and
BUNGE S.A.,

                          Defendants.

---

Case No. 10-CV-8916 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Robert C. Sentner, Esq.
Nicole F. Mastropieri, Esq.
Nixon Peabody LLP
New York, New York
*Counsel for Plaintiffs*

Phillip C. Landrigan, Esq.
Elizaveta Korotkova, Esq.
McCarthy Finger LLP
White Plains, New York
*Counsel for Defendant Anush Ramachandran*

Rachel Postman, Esq.
Reed Smith LLP
New York, New York
*Counsel for Defendants Bunge Ltd. and Bunge S.A.*

KENNETH M. KARAS, District Judge:

       Plaintiffs Vikas Goel ("Goel") and Rainforest Trading Ltd. ("Rainforest") (collectively,

"Plaintiffs") sued Defendants Bunge Ltd., Bunge S.A. (collectively, "Bunge"), and Anush

Ramachandran ("Ramachandran") (collectively, "Defendants"), in Supreme Court of the State of

New York, County of Westchester, alleging various state law claims. Ramachandran removed

the case to this Court pursuant to the Convention on the Recognition and Enforcement of

Foreign Arbitral Awards (the "New York Convention" or "Convention"), 9 U.S.C. § 205

("§ 205").  Plaintiffs have moved to remand the case to state court and for attorneys' fees,

arguing that removal was improper and that this Court lacks subject matter jurisdiction over the

case.  For the reasons stated herein, Plaintiffs' motion to remand is granted; Plaintiffs' motion

for attorneys' fees is denied.

## I.  Background

### A.  Factual Background

Goel, who is a resident of Dubai (Am. Compl. ¶ 4), founded and owned eSys

Technologies Pte Ltd. ("eSys"), a computer equipment distribution company incorporated under

the laws of, and headquartered in, Singapore, (*id.* ¶¶ 4-5).  In 2006, eSys needed to quickly raise

approximately $100 million to pay its creditors and stay in business following a dispute with a

manufacturer that resulted in the termination of eSys's distribution agreements.  (*Id.* ¶ 35.)  In

November 2006, Teledata Informatics ("Teledata") contacted Goel to express interest in

investing in and acquiring shares of eSys.  (*Id.* ¶ 37.)  On November 29, 2006, Goel and eSys

entered into a Share Subscription Agreement (the "Agreement") with Teledata in which Teledata

agreed to purchase 51% of the shares of eSys in exchange for $105 million.  (*Id.* ¶ 42.)  None of

the Defendants in the instant action signed the Agreement.  (Notice of Removal Ex. K, Annex 1.)

The Agreement contains a dispute resolution clause, which provides that: "[a]ny dispute,

whether contractual or not, arising out of or in connection with this Agreement (including any

question regarding its existence, validity, or termination) shall be referred to and finally resolved

by arbitration in Singapore . . . ."  (*Id.* § 5.12(a).)

Rainforest was set up as a holding company, organized under the laws of the British

Virgin Islands, to own all shares of eSys.  (Am. Compl. ¶¶ 8, 43-44.)  Teledata and Goel would

own Rainforest, and Teledata was given shares of Rainforest in accordance with the Agreement. (*Id.* ¶ 45.)  However, Plaintiffs allege that instead of paying funds to Goel and eSys, Teledata repeatedly diverted small amounts of money that it had deposited into the Rainforest bank account to Bunge and to Ramachandran-controlled companies through a scheme that also allowed Teledata to access an $80 million line of credit from the State Bank of India.  (*Id.* ¶¶ 54-66.)[1]  Bunge, which Plaintiffs allege had no relationship with Rainforest, has refused to return the funds to Rainforest.  (*Id.* ¶ 65.)

Ramachandran, a Teledata officer and resident of New York, who Plaintiffs claim "uses Teledata as a vehicle to further his fraudulent and wrongful ends" (*id.* ¶ 38), is alleged to have "orchestrated this scheme," (*id.* ¶ 58.)  Plaintiffs allege that they agreed to enter into the Agreement based on intentional misrepresentations made by Ramachandran and other Teledata employees that Teledata was a very large company with high levels of sales and sufficient cash reserves to pay for its eSys investment.  (*Id.* ¶¶ 39-40.)  However, according to Plaintiffs, Teledata was actually a sham company with fake financial results based on "fictitious sales to shell companies controlled by Ramachandran."  (*Id.* ¶ 52.)

B.  Procedural Background

On September 24, 2010, Plaintiffs filed a Complaint in the Supreme Court for the State of New York, County of Westchester, against Ramachandran and Bunge.  (Decl. of Robert C. Sentner in Supp. Of Pls.' Mot Remand to State Ct. And for Att'y's Fees ¶ 3; Notice of Removal Ex. A.)  On October 28, 2010, Bunge filed a motion to dismiss.  (Notice of Removal ¶ 2.)  On November 18, 2010, Plaintiffs filed an Amended Complaint with the permission of the state court and, on November 19, 2010, the state court judge denied Bunge's motion to dismiss as

---

[1] Bunge Ltd. is organized under the laws of Bermuda and headquartered in New York. (*Id.* ¶ 10.)  Bunge S.A. is incorporated in and headquartered in Switzerland.  (*Id.* ¶ 11.)

moot and set a scheduling order for motions in response to the Amended Complaint.  (*Id.*)  The Amended Complaint contains causes of action for:  (1) money had and received on behalf of Rainforest against Bunge (Am. Compl. ¶¶ 71-76); (2) unjust enrichment on behalf of Rainforest against Bunge (*id.* ¶¶ 77-82); (3) tortious interference with contract on behalf of Goel and Rainforest against Bunge (*id.* ¶¶ 83-89); (4) fraud on behalf of Goel against Ramachandran (*id.* ¶¶90-98); and (5) aiding and abetting fraud on behalf of Goel against Bunge, (*id.* ¶¶ 99-105).

On November 12, 2010, Plaintiffs also initiated an arbitration proceeding in Singapore (the "Singapore Arbitration") against Teledata and two of its subsidiaries pursuant to the Agreement's arbitration clause requiring arbitration in Singapore of any disputes related to the Agreement.  (Notice of Removal ¶ 4; *id.* Ex. K, Annex 1 § 5.12(a).)  Ramachandran and Bunge, who are not signatories of the Agreement, are not parties to the Singapore Arbitration.

On November 29, 2010, Ramachandran removed the instant case from state court to this Court.  (Dkt. No. 1.)  Ramachandran removed the case pursuant to § 205 of the New York Convention (Notice of Removal ¶ 1), arguing that:  (1) the allegations against Ramachandran in the Amended Complaint arise out of and in connection with the Agreement (*id.* ¶ 7); (2) the parties and claims are intertwined with the matters subject to the arbitration clause and will be affected by the outcome of the pending Singapore Arbitration (*id.* ¶ 9); and (3) the proceedings in this action should be stayed pending a final award and determination of the Singapore Arbitration, (*id.* ¶ 11).  Bunge consented to the removal.  (Notice of Removal 1.)

On January 21, 2011, Plaintiffs filed a motion to remand this case to state court and for attorneys' fees.  (Dkt. No. 9.)  Ramachandran has opposed Plaintiffs' motion to remand; Bunge has not.  The Court held oral argument on Plaintiffs' motion on May 24, 2011.  (Dkt. No. 19.)

II.  Discussion

A.  Standard of Review

Federal courts are courts of limited jurisdiction.  *See Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).  Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress."  *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also Irving Trust Co. v. Century Exp. & Imp., S.A.*, 464 F. Supp. 1232, 1234 (S.D.N.Y. 1979) (noting that the right of removal is "a matter of legislative grace" (citing *Great N. Ry. Co. v. Alexander*, 246 U.S. 276 (1918))).  Judicial scrutiny is especially important "in the context of removal, where considerations of comity play an important role."  *Johnston v. St. Paul Fire & Marine Ins. Co.*, 134 F. Supp. 2d 879, 880 (E.D. Mich. 2001).

Normally, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute).  However, § 205, the removal provision at issue in the instant case, is not subject to this same restriction because Congress intended § 205 to provide for "easy removal" and to "confer jurisdiction liberally."  *See Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002); *see also Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006) (describing § 205 as "one of the broadest removal provisions" and "emphasiz[ing] that the general rule of construing removal statutes strictly against removal cannot apply to [New York Convention] cases because in these instances, Congress created special removal rights to channel cases into federal court" (internal quotation marks omitted)); *Banco De Santander Cent. Hispano*

*v. Consalvi Int'l Inc.*, 425 F. Supp. 2d 421, 432 (S.D.N.Y. 2006) ("'[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes' underlie accession to the Convention." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985))).

The party asserting federal jurisdiction generally bears the burden of proving that the case is properly in federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

B. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

1. Framework of the Convention

Congress implemented the New York Convention by enacting Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. The Second Circuit has noted that "[t]he goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions and to unify the standards by which agreements to arbitrate are observed." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (citation omitted); *see also Acosta*, 452 F.3d at 376 ("Congress's purpose and intent, in enacting the Convention Act, was 'to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974))). "The adoption of the Convention by the

United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context." *Smith/Enron*, 198 F.3d at 92.

An arbitration agreement falls under the Convention if it arises out of a legal, commercial relationship. *See* 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."). As the Second Circuit has explained, there "are four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron*, 198 F.3d at 92.

District courts have original jurisdiction over actions that fall under the Convention. *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."). The Convention also contains a specific removal provision:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

*Id.* § 205.[2]

---

[2] The Court notes that § 205's allowance of removal at any time before trial is another indication that § 205 is intended to be broader than the general removal statute, which requires a defendant to remove a case within thirty days of receiving the initial pleadings or being served

The Convention explicitly grants district courts the power to compel arbitration, *see id.* §
206 ("A court having jurisdiction under this chapter may direct that arbitration be held in
accordance with the agreement at any place therein provided for . . . ."), and the power to
confirm an arbitration award once the award is rendered, *see id.* § 207 ("Within three years after
an arbitral award falling under the Convention is made, any party to the arbitration may apply to
any court having jurisdiction under this chapter for an order confirming the award as against any
other party to the arbitration.").

### 2.  Removal Under § 205

Ramachandran argues that he properly removed this case under § 205 of the New York
Convention because the case relates to the Agreement—which contains an arbitration
clause—and the Singapore Arbitration initiated by Plaintiffs.  (Mem. of Law in Opp'n to Pls.'
Mot. to Remand to State Ct. ("Def.'s Mem.") 1-2.)[3]  Plaintiffs believe that remand is required
because Ramachandran is not a signatory of the Agreement and refuses to either participate in,
or be bound by the result of, the Singapore Arbitration.  (Mem. of Law in Supp. of Pls.' Mot.
Remand to State Ct. and for Att'ys' Fees ("Pls.' Mem.") 1-2.)  Plaintiffs argue that the New
York Convention conveys federal jurisdiction only to compel arbitration or confirm an arbitral
award and, because Ramachandran is not seeking either of these objectives, but only a stay,
Plaintiffs maintain that this Court lacks subject matter jurisdiction over the case.  (*Id.* at 6-8.)

---

with the summons.  *See* 28 U.S.C. § 1446.

[3] Ramachandran also asserts, incorrectly, that there is diversity jurisdiction in this case
because he is a resident of New York and Bunge S.A. is a Swiss company, while Plaintiffs
are both non-citizens (while acknowledging that he could not remove the case pursuant to 28 U.S.C.
§ 1441(b) because he is a citizen of New York).  (Def.'s Mem. 12 n.10.)  Given this lineup of
parties, there is not complete diversity.  *See Universal Licensing Corp. v. Paola del Lungo
S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking . . . where on one side there are
citizens and aliens and on the opposite side there are only aliens.").

"Subject matter jurisdiction under § 205 raises a difficult and novel question.  Few published decisions concern § 205 removal and fewer still address removal and subject matter jurisdiction at any length."  *Banco*, 425 F. Supp. 2d at 427 (citation, footnote, and internal quotation marks omitted).  In fact, the Court is aware of no other cases with the precise posture of this case.  In most cases addressing removal under § 205, the removing defendant seeks to compel the plaintiff to arbitrate with the defendant.  There are certainly cases involving non-signatories to an applicable arbitration agreement, both where a signatory defendant seeks to compel a non-signatory plaintiff to arbitrate its claims, and where a non-signatory defendant seeks to compel a signatory plaintiff.  However, the Court has found no case where a non-signatory defendant has removed a case under § 205 as related to an arbitration agreement to which the defendant is not a party, and also is not seeking to compel or participate in an arbitration.

Plaintiffs also argue that "this matter does not 'fall under the Convention' as is required for removal."  (Pls.' Mem. at 8.)  In so arguing, Plaintiffs misstate the language of § 205.  The matter need not fall under the Convention; rather, the Agreement must fall under the Convention, and the subject matter of this action must *relate* to the Agreement.  *See* 9 U.S.C. §§ 202, 205.  The Agreement itself clearly meets the four requirements to fall under the Convention:  (1) the arbitration clause is in the written Agreement; (2) the Agreement provides for arbitration in Singapore, a signatory of the Convention; (3) the Agreement is commercial; and (4) the Agreement's scope is international.  *See Smith/Enron*, 198 F.3d at 92.  Indeed, Plaintiffs are pursuing arbitration against Teledata pursuant to the Agreement in Singapore.  Thus, the Court must determine whether Plaintiffs' claims against Ramachandran in the instant action "relate to" the Agreement.

9

a.  Interpretation of "Relates To"

The Second Circuit has not addressed the meaning of "relates to" in § 205.  However, the two circuits that have addressed the issue have held that § 205 confers broad removal jurisdiction.  In *Beiser v. Weyler*, the Fifth Circuit opined that "whenever an arbitration agreement . . . could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit."  284 F.3d at 669 (emphasis in original).  The court concluded that:

> [T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.  As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of 'relates to.'

*Id.*  The plaintiff in *Beiser*, who signed an agreement containing an arbitration clause between the defendant and the company of which the plaintiff was the sole employee, brought a state court action against the defendant alleging state law claims.  The defendant removed to federal court on the grounds that the case related to the arbitration agreement and moved to compel arbitration.  *Id.* at 666-67.  The plaintiff moved to remand, arguing that he was not a party to the agreement and had signed it only in his official capacity.  *Id.* at 667.  The Fifth Circuit concluded that the plaintiff's claims were related to the arbitration agreement because "[d]eveloping [plaintiff's] case will necessarily involve explaining the scope and operation" of the agreement and the "suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise."  *Id.* at 669.  It also was conceivable that a court could pierce the corporate veil and hold the plaintiff personally responsible for the contracts.  *Id.* at 670.  Thus, the court held that "[b]ecause the arbitration agreements could conceivably affect the disposition of [plaintiff's] claims, those agreements 'relate to' his claims, and the district court had removal jurisdiction under § 205."  *Id.*  Emphasizing the breadth of § 205 removal, the court stated that "absent the

rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Id.* at 671-72.  However, the *Beiser* court also indicated that when a case is removed under § 205, the district court will have jurisdiction only to determine if the dispute is subject to arbitration.  *See id.* at 675 ("The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205.  If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.").

The Fifth Circuit further extended its understanding of "relates to" in *Acosta*.  The plaintiffs brought a mass tort action under Louisiana's direct action law, which allowed them to sue both the alleged tortfeasors and their foreign insurers.  The insurers removed the action to federal court under § 205 and plaintiffs moved to remand.  The plaintiffs' claims against the insurers hinged on policy coverage, which under the insurance policy was to be determined by arbitration.  *See Acosta*, 452 F.3d at 378 n.7.  The plaintiffs argued that because the direct-action statute cancelled the binding effect of the arbitration clause, the arbitration proceedings would not affect the litigation's outcome and therefore the action was not "related" under *Beiser*.  *Id.* at 377.  However, the court determined that the action still was properly removed because it was "unarguable that the subject matter of the litigation has some connection, has some relation, has some reference to the arbitration clauses here." *Id.* at 378-79.  The court emphasized that it could not "ignore Congress's decision that the federal courts are best able to establish uniformity in the enforcement of arbitral agreements[] [and] therefore appl[ied] the jurisdictional provision, § 205, according to the plain meaning of its broadly drafted terms." *Id.* at 379.

In a recent decision, the Ninth Circuit agreed with the Fifth Circuit's reading of § 205 in *Beiser*, explaining that "[t]he phrase 'relates to' is plainly broad, and has been interpreted to

convey sweeping removal jurisdiction in analogous statutes" and "[n]othing in § 205 urges a narrower construction." *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011).  The court expressly rejected the determination, made by a district court in another case, that a state court action could only be removed under § 205 if the parties to the action had entered into an arbitration agreement, noting that the language of § 205 does not support adding a privity requirement, and instead focuses on the relatedness of the subject matter of the action. *Id.*  The *Infuturia* court concluded that because "the defendant relies on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration, the arbitral award 'could conceivably affect the outcome' of the case" and, therefore, removal was proper.  *Id.* at 1138-39.

As noted, the Second Circuit has not examined § 205 removal.  However, a few district court cases within the Second Circuit have applied the logic of *Beiser* in § 205 removal cases.  In *Banco*, the court concluded that actions to vacate an arbitration award could be removed under § 205, adopting *Beiser*'s broad view of "relates to" and rejecting the contention that § 205 removal was limited to state court actions seeking to compel arbitration or confirm an arbitration award. *See Banco*, 425 F. Supp. 2d at 428-30.  The court explained that Congress, in permitting the ground for removal to appear in the removal petition and not just on the face of the complaint, granted removal jurisdiction in cases where the defendant "could articulate a 'federal defense' 'related to' the Convention."  *Id.* at 430.  The *Banco* court also noted that "[t]he legislative history suggests the intention of a distinct federal role in the enforcement of Convention awards and agreements."  *Id.* at 433 (citing S. Rep. No. 91-702, at 6 (1970) ("[T]he proposed system of implementation through the U.S. district courts will assist the uniform and efficient enforcement of arbitration agreements and awards in foreign commerce.")).

In another case, a district court cited the *Beiser* approach but concluded that "even were the [c]ourt to adopt the broad theory of *Beiser*, no arbitration agreement or award 'relate[d] to' [the plaintiff's] suit because neither could conceivably affect the outcome of [the plaintiff's] case." *Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 488 (S.D.N.Y. 2010) (alterations and internal quotation marks omitted) (granting plaintiff's motion to remand its action relating to the enforcement of a previous state court judgment confirming a foreign arbitral award that plaintiff had obtained).  The court noted that the removing defendants were "unable to argue that an arbitration agreement provides a defense or other procedural hurdle to a state court action or other proceeding because in this case the arbitration is already completed." *Id.* at 489.

In addition, several other district courts within the Second Circuit addressed § 205 removal in cases decided before *Beiser*.  One such case, which Ramachandran has relied heavily upon in his memorandum of law, is *York Hannover Holding A.G. v. American Arbitration Ass'n*, 794 F. Supp. 118 (S.D.N.Y. 1992).  In *York*, the plaintiff sued the American Arbitration Association ("AAA") in state court over the AAA's handling of a dispute regarding the arbitration panel in an arbitration involving the plaintiff.   *Id.* at 119-20.  The other party to the arbitration intervened and removed the action to federal court and the plaintiff moved to remand. *Id.*  The court denied the motion, concluding that a "sufficient relationship exist[ed] between the provisions of the arbitration agreement and what [the plaintiff] [sought] to accomplish in the action" because the dispute involved the appointment of the arbitrators, a process which was included in the arbitration agreement.  *Id.* at 122.  The court rejected the contention that § 205 only applied to state court actions seeking to enforce an arbitration agreement or to set aside an arbitral award, explaining that "so narrow a construction [is] inconsistent with the plain language of the statute," and noting that the sparse authority construing § 205 "supports a broader

construction of the word 'relates'" to include "state court actions involving parties not bound by arbitration agreements, where the state court claims involved the same subject matter as claims being asserted in pending arbitrations." *Id.* at 122-23.

In *CAM S.A. v. Rungsted Shipping A/S*, No. 88-CV-9274, 1989 WL 51815 (S.D.N.Y. May 10, 1989), the court concluded that based on the plain language of § 205, the action related to an arbitration agreement falling under the Convention. *Id.* at *3. Although there was no arbitration agreement between the plaintiff and the defendant, each party had an arbitration agreement with a third-party, and both parties were already engaged in a consolidated arbitration with the third party. *Id.* at *2. Although the plaintiff could not arbitrate its tort claim directly against the defendant under the agreement, the court concluded that the issues related to the ongoing arbitration and, accordingly, denied the plaintiff's motion to remand. *Id.* at *2-3. It bears noting that in addition to finding that removal was proper, the court also granted the defendant's motion to stay the action with the express condition that the parties submit their dispute to the ongoing arbitration; otherwise, a stay was not warranted. *Id.* at *4.

## b. Scope of Subject Matter Jurisdiction Under the New York Convention

Plaintiffs argue that some courts within the Second Circuit have held, in cases not involving removal under § 205, that a federal court only has jurisdiction under the New York Convention to either compel arbitration or confirm an arbitral award. *See, e.g.*, *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n.5 (2d Cir. 1989) (noting, in the context of affirming the district court's imposition of Rule 11 sanctions, that the district court had "appropriately rejected" the contention that it had jurisdiction under the Convention to issue a preliminary injunction because "the party invoking [the Convention's] provisions did not seek

either to compel arbitration or to enforce an arbitral award");[4] *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 349 (S.D.N.Y. 2005) (determining that the court had jurisdiction over requests that aided the continuation of arbitration, but noting that "[t]here appears to be little or no basis in Second Circuit case law for invocation of the New York Convention . . . by a party seeking to *avoid* arbitration, rather than compel or aid it" (emphasis in original)); *Gerling Global Reinsurance Corp. v. Sompo Japan Ins. Co.*, 348 F. Supp. 2d 102, 105-06 (S.D.N.Y. 2004) (rejecting argument that the court had jurisdiction under § 203 to issue a declaratory judgment regarding the preclusive effect of a prior judicial decision confirming an arbitration award, because "the Convention conveys federal jurisdiction only to compel arbitration or confirm an arbitral award"); *Siderius, Inc. v. Compania de Acero del Pacifico, S.A.*, 453 F. Supp. 22, 25 (S.D.N.Y. 1978) (directing the parties to proceed with the arbitration they were already engaged in, and dismissing the complaint for lack of subject matter jurisdiction because, once the court has referred the parties to arbitration, the Convention does not provide for judicial involvement until a party seeks recognition of the award); *see also Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 186 (E.D.N.Y. 2006) (stating that if an arbitration agreement exists under the Convention and an action is removed to federal court as related to the agreement, the federal court must compel arbitration of any dispute falling within the scope of the agreement).

However, the Second Circuit has subsequently taken a broader view of jurisdiction under the New York Convention.  *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 n.6

---

[4] The district court in *International Shipping* also noted that even if there was an arbitral award or motion to compel arbitration, the Convention could only confer jurisdiction as to the one defendant with an agreement to arbitrate with the plaintiffs; the other defendants could not be required to arbitrate disputes that they had not agreed to submit to arbitration.  *See Int'l Shipping Co. v. Hydra Offshore, Inc.*, 675 F. Supp. 146, 153 (S.D.N.Y. 1987).

(2d Cir. 2011) (noting that the "dicta" in *International Shipping* "suggests that the New York Convention is enforceable only where the party invoking its provisions seeks either to compel arbitration or to enforce an arbitral award" but, concluding that "in light of the principle that the Convention should be interpreted broadly to effectuate its recognition and enforcement purposes, . . . the case law applying the New York Convention and the federal policy favoring arbitration apply where a court acts to protect its prior judgments by staying incompatible arbitral proceedings otherwise governed by that Convention") (internal quotation marks omitted); *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) (holding that "entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206" in a case where the plaintiff sought both to compel arbitration and other provisional remedies in connection with the arbitrable controversy); *see also Venconsul N.V. v. TIM Int'l N.V.*, No. 03-CV-5387, 2003 WL 21804833, at *3 (S.D.N.Y. 2003) (interpreting *Borden* "as recognizing a court's power to entertain requests for provisional remedies in aid of arbitration even where the request for remedies does not accompany a motion to compel arbitration or to confirm an award," and noting that jurisdiction to award these forms of relief in connection with an arbitration is consistent with the "desire for speedy arbitral decisions" and the "desire to preserve the possibility of recoveries upon awards").

C.  Application

Ramachandran has urged the Court to adopt the *Beiser* standard and find that removal was proper if the Singapore Arbitration could conceivably impact the outcome of this lawsuit. Even applying *Beiser*'s broad conception of "relates to," the Court concludes that Ramachandran has not met his burden of showing that he properly removed the action.  Ramachandran maintains that the allegations against him in the Amended Complaint arise out of the same transaction that is the subject of the Singapore Arbitration and that the parties to, and the claims

16

asserted in, this action are inextricably intertwined with matters subject to the arbitration clause. (Def.'s Mem. 5.)  However, given that Ramachandran is not a party to the arbitration, and has expressly refused to be bound by the arbitration's outcome, he has not explained how the disposition of this case could be affected by that arbitration.  Ramachandran claims that as in *Beiser* and in *York*, developing Goel's case will necessarily involve explaining the scope and operation of the Agreement.  (*Id.* at 10.)  Yet Ramachandran has not explained why that is the case.  The Amended Complaint contains a single claim against Ramachandran, alleging that he made fraudulent misrepresentations to Goel regarding Teledata that caused Goel to enter into the transaction.  If Ramachandran is not involved in the Singapore Arbitration, those proceedings will not determine his role.  And, even if the Singapore Arbitration did determine some issues that would also be relevant to this action, those determinations would not impact the outcome of this action because, as Ramachandran admits, they would have no collateral estoppel effect here because Ramachandran did not have an opportunity to litigate the issues in the Singapore Arbitration.  Thus, this case is unlike *Infuturia*, where the removing defendant argued that issues already resolved in the arbitration could be used as collateral estoppel in the removed action.

This case also is distinguishable from *Beiser* and *Acosta*.  The *Beiser* court emphasized that removal is proper whenever a defendant contends that an arbitration clause could provide a defense, as long as that contention is not absurd or impossible.  *Beiser*, 284 F.3d at 669.  Here, Ramachandran claims that he has raised the arbitration clause as a defense (Def.'s Mem. 9), but he has not indicated what that defense is.  In *Beiser*, the arbitration agreement, which had been signed by the removing defendant, was a possible defense because the defendant was seeking to compel the non-signatory plaintiff to arbitrate the parties' dispute.  Similarly, in *Acosta*, the removing defendants asserted as a defense that they wanted to arbitrate the claims against them pursuant to an arbitration agreement.  Here, in contrast, Ramachandran is not seeking to have his

dispute arbitrated; instead, he maintains that any claim Goel asserts against him must wait while Plaintiffs first arbitrate their dispute with Teledata, a non-party in this action.  There is no support in the case law for this contention.  Here, Ramachandran is not seeking to enforce an award or an agreement; he is simply seeking a stay.

In asking the Court to find that removal was proper, Ramachandran also argues that courts have found § 205 removal jurisdiction to exist in cases involving non-signatories to arbitration agreements, where the claims involved the same subject matter as claims being asserted in pending arbitrations.  (Def.'s Mem. 9.)  However, in such cases, the non-signatories are normally seeking to arbitrate their disputes.  Here, on the other hand, Ramachandran's counsel admitted at oral argument that he could not cite a single case supporting his application of § 205 to a case where a party sought to remove and stay the case pursuant to an arbitration to which the party was not, and did not want to be, a participant.

Moreover, the decisions from the Second Circuit and other courts within this Circuit addressing subject matter jurisdiction under the Convention lead the Court to conclude that federal jurisdiction does not exist in this case.  Plaintiffs argue that the Convention only grants jurisdiction to compel arbitration or enforce an award.  Ramachandran is correct that recent cases have indicated that a district court's jurisdiction is not so narrow.  However, no court has concluded that the broadening of jurisdiction governs the situation currently before this Court. *Borden* and *Venconsul* held that a district court may entertain requests for remedies that aid arbitration.  However, those cases involved a request to arbitrate, or an already ongoing arbitration, *between the parties to the federal court action*.  The *Veneconsul* court determined that it had jurisdiction to issue a preliminary injunction preventing one party from taking action that was the subject of the ongoing arbitration, noting that jurisdiction to award such relief was consistent with the desire for a speedy arbitral decision and to preserve the possibility of

recovery upon award in the arbitration.  *Veneconsul*, 2003 WL 21804833, at *3.  Such relief is categorically different from that sought by Ramachandran, who has requested that the Court exercise jurisdiction merely to stay the litigation, even though there is no plausible reason to believe that a stay would affect the speed of the arbitration decision or have any effect on the recovery of the award.[5]

Ramachandran also makes much of the fact that, unlike many of the cases cited by Plaintiffs, here there is no need to compel arbitration because arbitration has already been commenced and Ramachandran is not seeking to prevent the arbitration.[6]  At oral argument, Ramachandran again claimed that there was no need to compel arbitration—the usual request in cases removed pursuant to § 205 – because arbitration was already ongoing.  The Court disagrees.  Ramachandran could have removed the case and sought to compel Plaintiffs to arbitrate with Ramachandran, even though he was not a signatory to the Agreement.  Indeed, that was the precise situation in *Beiser*.  During the oral argument, Ramachandran also asserted that if there had not been an ongoing arbitration between Plaintiffs and Teledata, he could have removed the case and moved to compel Plaintiffs to arbitrate their claims with Teledata, and that the Court would have had jurisdiction over such a motion.  Yet, the Court is aware of no support for Ramachandran's position that he could move to compel Plaintiffs to arbitrate with non-

---

[5] In granting Plaintiffs' motion, the Court has only considered whether it has jurisdiction to hear this matter; the Court expresses no opinion on whether a stay would have been appropriate if the case had been properly removed.

[6] The Court notes that although Plaintiffs commenced the Singapore Arbitration, they submitted documents indicating that the proceeding had been delayed because Teledata had yet to pay its portion of the arbitration fees, despite requests from the arbitrator for payment.  (Reply Decl. of Robert C. Sentner in Further Supp. of Pls.' Mot. to Remand Ex. A.)  However, Ramachandran's counsel represented at oral argument that the arbitration's first hearing was scheduled for June 10, 2011, and attributed much of the delay to purported misjoinder of parties by Plaintiffs.

parties to this lawsuit.  Moreover, a motion to compel arbitration between Plaintiffs and another

party would not render the dispute between Plaintiffs and Ramachandran arbitrable.

Ramachandran also argues that "the refusal to exercise jurisdiction and consider a stay of

litigation pending arbitration will thwart the policy of encouraging and enforcing agreements to

arbitrate under the New York Convention." (Def.'s Mem. 12.)[7]  Yet, even though there is

already an ongoing arbitration, it does not involve any of the defendants in this action.  By

refusing to exercise jurisdiction, the Court is not failing to enforce the agreement to arbitrate, or

in any way interfering with the arbitration, because the arbitration will continue regardless of the

posture of this case.[8]

---

[7] At oral argument, Ramachandran also invoked another policy argument in favor of removal — the purported "implicit reach" of the Convention to protect directors and officers of a corporate signatory to an arbitration agreement.  Ramachandran argued that the drafters of the Convention were concerned with not subjecting individuals who work for a company to litigation where the company had agreed to arbitrate disputes, and that the Convention should be implicitly read to prohibit suing directors and officers when there is an arbitration agreement.  However, Ramachandran offered no support for this contention.  The Court is aware of no case stating that directors and officers cannot be sued when there is an arbitration agreement and, as will be discussed *infra*, there is a Second Circuit case outside the context of § 205, *Baker & Taylor, Inc. v. Alphacraze.com Corp.*, 602 F.3d 486 (2d Cir. 2010), suggesting the opposite.  Moreover, the Court has not been presented with any evidence that the drafters had this "implicit" policy rationale in mind.  The goal of the Convention was to protect arbitration rights, not to protect directors and officers seeking to avoid arbitration.

[8] Ramachandran also asserts, at numerous points in his memorandum of law, that Plaintiffs are trying to circumvent the arbitration clause in the Agreement and the "streamlined dispute resolution process agreed to under the arbitration terms." (Def.'s Mem. 5, 7, 17.)  However, Plaintiffs are proceeding with arbitration with Teledata, and have made clear that they would have sought to arbitrate their dispute with Ramachandran as well if they were able to do so. (Reply Mem. of Law in Further Supp. of Pls.' Mot. to Remand 2.)  In fact, at a conference held before the Court on January 11, 2011, and again at oral argument, Goel represented that he would be willing to dismiss his claims against Ramachandran in this action if Ramachandran would agree to submit the claims to the Singapore Arbitration.  Ramachandran has refused to do so and, therefore, his contention that Plaintiffs are attempting to avoid arbitration is disingenuous.

In this vein, Ramachandran also argues that policy considerations of judicial economy support removal in this case. Citing Congress's desire for a distinct federal role in the enforcement of Convention awards and agreements, Ramachandran argues that in § 205 removal cases, courts will exercise jurisdiction over exclusively federal claims and then often will remand the case for decision of the state law claims on the merits. (Def.'s Mem. 14-15.) He further cites *Beiser* for the proposition that district courts will ordinarily remand cases that are not subject to arbitration. (*Id.* at 15 (citing *Beiser*, 284 F.3d at 675).) However, there is no federal issue for the Court to decide in the present case. In *Beiser*, the court determined that it had jurisdiction to decide whether the non-signatory plaintiff could be compelled to arbitrate his claims with the defendant; if the court determined that the plaintiff did not have to arbitrate with the defendant, the case would be returned to state court. In contrast, Ramachandran has not asked the Court to determine if Goel should have to arbitrate his claims against Ramachandran or if these claims should be submitted to the ongoing arbitration. In this situation, judicial economy would not be served by assuming jurisdiction over the matter.[9]

Moreover, the Court is aware of only one other case in which a party who was not a signatory to an arbitration agreement sought to invoke the arbitration in a federal court litigation, yet refused to participate in the arbitration. Although this case, *Baker & Taylor, Inc. v. Alphacraze.com Corp.*, 602 F.3d 486 (2d Cir. 2010), does not address removal or subject matter jurisdiction under the New York Convention, its treatment of this factual scenario is still

---

[9] This is particularly true given that four of the five causes of action in the Amended Complaint are asserted solely against Bunge. At oral argument, Bunge indicated that it believes severance of the claims against it would be inappropriate; Plaintiffs chose to bring the claims against Ramachandran and Bunge in one action, and Bunge thinks the claims should remain in one action. However, there is no suggestion that this Court has removal or subject matter jurisdiction over the claims against Bunge and, as already noted, Bunge did not oppose Plaintiffs' motion to remand.

instructive.  In *Baker*, the plaintiffs sued a company and several of the company's officers in federal district court; the plaintiffs and the defendant company had an arbitration agreement to which the officers were not signatories.  *Id.* at 488.  Neither of the signatory parties sought arbitration, and a default was entered against the company in the federal action.  *Id.* at 490.  The officers moved to dismiss, arguing that the plaintiffs should be required to arbitrate *with the company* and that the claims against the officers should be dismissed or stayed in favor of arbitration; however, the officers explicitly did not move to compel plaintiffs to arbitrate *with the officers* and maintained that, as non-signatories, they could not be compelled to arbitrate.  *Id.* The district court concluded that dismissal was appropriate because all of the claims arose under the debt that plaintiffs claimed they were owed under the agreement containing the arbitration provision.  *Id.*

> The Second Circuit rejected this conclusion:

> [A]lthough the [officers] espouse arbitration *between* [the plaintiff] *and* [the company], they themselves have expressly declined to participate in any such arbitration, and view themselves as under no contractual obligation to participate. We know of no authority holding that two parties can be forced to arbitrate against their present wishes, even if they originally signed a contract agreeing to arbitrate, when the only parties espousing arbitration are nonsignatory parties who refuse to participate therein.

*Id.* at 491 (emphasis in original).  The court further explained that although in certain cases non-signatories have been allowed to enforce an arbitration agreement, those cases "involve situations in which the nonsignatory has sought to compel a signatory to arbitrate in a proceeding in which the nonsignatory intends to participate."  *Id.*  Because the officers explicitly disclaimed any legal obligation to arbitrate and refused to arbitrate, the court determined that they had effectively waived any claim to enforce the arbitration agreement.  *Id.*

> Ramachandran argues that *Baker* is inapplicable to the current case, characterizing the *Baker* court as concluding that the defendant waived the right to compel arbitration with the

plaintiff because the case had already proceeded with discovery and motion practice.  (Def.'s Mem. 14.)  This is a misreading of *Baker* and its relevance to the current case.  In the portion of *Baker* cited by Ramachandran, the *Baker* court concluded that the defendant *company* had waived the right to compel arbitration at that stage in the litigation.  *Baker*, 602 F.3d at 492.  Ramachandran ignores the section of *Baker*, discussed above, where the court concluded that *the officers* could not compel arbitration of the claims or stay the federal action, because they did not wish to participate in the arbitration.  *Id.* at 491.  Admittedly, *Baker* is not directly applicable to the instant case, as it did not involve § 205 removal and there was no ongoing arbitration.  But, importantly, it does suggest that a party may not seek to enforce and benefit from an arbitration agreement when it has expressly declined to participate in or be bound by the arbitration.

Finally, the Court notes that in concluding that § 205 broadly conferred removal, the *Beiser* court emphasized that "[b]ecause decisions to remand for lack of subject matter jurisdiction are not appealable, the district court's conclusion not to enforce an arbitration clause under the Convention would be a final, irrevocable federal pronouncement."  *Beiser*, 284 F.3d at 672.  This is less of a concern in the instant case where there is an existing arbitration which the removing defendant, Ramachandran, need not, and is electing not, to participate in or be bound by.  The Court is not concluding that an arbitration clause should not be enforced; instead, it is simply declining to assume jurisdiction over an action involving Defendants that are neither parties to the Agreement containing the arbitration clause nor seeking to be involved in the already ongoing arbitration.  If Ramachandran believes that Goel's claim against him needs to be arbitrated, he is free to seek to compel Goel to arbitrate their dispute.[10]

---

[10] As already noted, such a motion to compel would be unnecessary because Goel has expressed a willingness and a desire to have Ramachandran participate in the arbitration.

As the party asserting federal jurisdiction, Ramachandran bears the burden of proving that the case is properly in federal court.  Because he has failed to establish that the claims asserted against him relate to the Agreement within the meaning of § 205 and the applicable case law, or that the Court has subject matter jurisdiction over Plaintiffs' claims under the provisions of the New York Convention, the case was not properly removed.

D.  Attorneys' Fees

Plaintiffs also ask the Court to award them, pursuant to 28 U.S.C. § 1447(c), the attorneys' fees and costs that they incurred in seeking to remand this matter.  The Court acknowledges that, as Plaintiffs argue in their reply memorandum of law, Ramachandran's statements accusing Plaintiffs of attempting to circumvent the arbitration process are unsupported and bordering on disingenuous.  However, the Court declines to award attorneys' fees in this case.  Although the Court has ultimately determined that removal was improper, § 205 removal does raise a difficult question that has barely been discussed by the courts.  Under these circumstances, the Court concludes that there was a reasonable basis for attempting to remove the case and, therefore, awarding attorneys' fees is not warranted.

<u>III.  Conclusion</u>

For the reasons stated herein, Plaintiffs' motion to remand is granted.  Plaintiffs' motion for attorneys' fees is denied.  The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 9), effect immediate remand to the New York State Supreme Court, Westchester County, and close this case.


SO ORDERED.


Dated:     White Plains, New York
           September 26, 2011

                                              _____
                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE

Service List (via ECF):

Robert C. Sentner, Esq.
Nicole F. Mastropieri, Esq.
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
(212) 940-3000
Fax: (212) 940-3111
Email: rsentner@nixonpeabody.com
nmastropieri@nixonpeabody.com
*Counsel for Plaintiffs*

Phillip C. Landrigan, Esq.
Elizaveta Korotkova, Esq.
McCarthy Fingar LLP
11 Martine Ave, 12th Floor
White Plains, NY 10606
(914) 946-3700
Fax: (914) 946-0134
Email: plandrigan@mccarthyfingar.com
*Counsel for Defendant Anush Ramachandran*

Wendy Helene Schwartz, Esq.
Rachel Postman, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
(212) 888-3033
Fax: (212) 888-0255
Email: wschwartz@reedsmith.com
*Counsel for Defendants Bunge Ltd. and Bunge S.A.*